UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROYAL PLAZA MASTER OWNERS ASSOCIATION, INC., an Idaho Corporation,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, and BUSINESS ENTITIES DOES I through X, and DOES I through X,<br><br><div align="center">Defendant.</div> | Case No. 1:22-cv-00416-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case involves a dispute over a claim for benefits brought under an insurance policy issued by Defendant Travelers Property Casualty Company of America (Travelers) on condominiums located in a mixed-use residential/commercial building owned by Plaintiff Royal Plaza Master Owners Association, Inc. (Royal Plaza). Plaintiff filed a claim under the policy for interior water damage. Defendant denied the claim. As a result, Plaintiff filed this lawsuit.

Presently before the Court is Defendant's motion for summary judgment. (Dkt. 36). The motion is fully briefed and a hearing was conducted on November 7, 2024. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will grant in part and deny in part the motion for summary judgment.[1]

## BACKGROUND

### 1.    Factual Allegations[2]

Plaintiff is the named policyholder on the businessowners property coverage insurance policy issued by Travelers for the Royal Plaza Condominiums located at 1112 W. Main Street in Boise, Idaho, effective from August 24, 2019 to August 24, 2020. (Dkt. 37-14; Dkt. 41-1, Ex. A). In August 2019, Royal Plaza retained Upson Company (Upson) to perform routine rooftop maintenance and minor repairs to the roof of the building. The following month, September 2019, Royal Plaza hired Hammersmark Building Company, LLC (Hammersmark) to install a metal safety railing and make other modifications in the common rooftop patio area.

On December 2, 2019, a leak in the interior of the building was reported by Phil and Rhonda Hughes, residents of one of the top floor condominium units. The building maintenance superintendent, Dave Conway, inspected the roof and observed snow and

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 19).

[2] Consistent with the standard on summary judgment, the factual allegations are written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence.

MEMORANDUM DECISION AND ORDER  - 2

ice buildup on the roof and patio. (Dkt. 42, Conway Dec. ¶ 12). In his declaration, Conway states the weather in late November and early December was wet and snowy at times with freezing and thawing, and that the leak reported by the Hughes was intermittent and weather-related as it only became apparent when the weather was bad. (Dkt. 42, Conway Dec. ¶¶ 12-13). Conway contacted Upson to inspect the roof and make repairs as needed to address the leak, which took several weeks. Upson was initially dispatched on December 26, 2019, and performed further inspections and repairs thereafter. Upson submitted an invoice dated January 31, 2020, reporting that its technicians spent multiple days chasing the leak and patched several areas on the roof. (Dkt. 37-10; Dkt. 42-1, Ex. A, Upson Invoice). Upson's invoice includes several pictures of the holes and voids found on the roof, and other failures in the caulking and flashing. The pictures in the Upson invoice do not show snow or ice on the roof of the building. (Dkts. 48-51).[3]

In January 2020, Royal Plaza retained Weathertight Roofing (Weathertight) to investigate the cause of the roof leak and to perform additional repairs. On January 13, 2020, Weathertight inspected two areas of the roof where the leak was reported, and completed repairs to the roof on January 17, 2020. (Dkt. 37-11; Dkt. 42-1, Ex. B, Weathertight Invoices). Weathertight's invoices report having to remove snow and ice from the roof, and to finding numerous voided membrane seams and holes in the roofing

---

[3] During the hearing, the parties were asked whether the pictures on pages 3 and 8 of Upson's invoice show snow or ice on the roof. The parties submitted supplemental briefing on the issue with both confirming that the pictures in the Upson invoice do not show snow or ice on the roof of the building. (Dkts. 47-51).

membrane. Weathertight noted that it believed the roof was not installed properly due to its significant deficiencies in seams.

On February 11, 2020, Royal Plaza filed an insurance claim for the water damage to the interior of the building under its policy with Travelers. (Dkt. 37-2, Claim Summary). Travelers opened a claim and, on February 17, 2020, Jacob Eiband completed an inspection of the roof. Eiband concluded the cause of the loss was water damage from rain following the installation of a barrier on the roof which caused water to drain down the walls and behind the waterproof membrane. (Dkt. 37-3, Claim Note).

On March 23, 2020, Travelers sent a letter to Royal Plaza, signed by Eiband, denying the insurance claim under Paragraph A.5.a.(1)(a) of the policy, which limits recovery for loss or damage to the interior of any building or structure to instances where the "structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, and sand or dust enters…." (Dkt. 37-5, Denial Letter; Dkt. 37-14, Policy at 4). Eiband concluded that "there was no damage sustained or other covered loss that occurred prior to water entering the building, coverage is not afforded for this loss." (Dkt. 37-5, Denial Letter).

Thereafter, both Royal Plaza and Travelers engaged further investigations of the cause of the leak and had discussions concerning the claim. (Dkt. 37-7, Structural Engineer Report; Dkt. 37-12, Travelers email). Royal Plaza retained a structural engineer, David Sansotta, to investigate water damage to the steel beams in the ceiling space above the Hughes' unit. Sansotta authored a report dated May 27, 2020, finding there was water damage to the beams and to the fire-proofing spray insulation on the beams. (Dkt. 37-7,

Structural Engineer Report). Travelers exchanged information and had discussions with Royal Plaza, Weathertight, and Hammersmark. (Dkt. 37-12, Travelers email). Royal Plaza requested that Travelers reconsider its denial of coverage by a letter dated August 20, 2021. (Dkt. 37-8, Royal Plaza Letter).[4] No response was received prior to the filing of this lawsuit.

## 2.    Procedural Background

As a result of the foregoing, on August 25, 2022, Royal Plaza filed this action against Travelers alleging claims for breach of contract, bad faith, and negligent adjustment. (Dkt. 1).[5] An amended complaint was filed on November 18, 2022, raising the same claims. (Dkt. 17). On July 29, 2024, Defendant filed the motion for summary judgment presently before the Court. (Dkt. 36).

## STANDARD OF LAW

Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

---

[4] The parties identify differing dates for when Plaintiff requested reconsideration of the claim denial. (Dkt. 38, DSOF ¶ 13) (citing August 8, 2021); (Dkt. 40, PSOF ¶ A.13); (Dkt. 17, Am. Complaint ¶ 15) (citing September 7, 2021). For purposes of this motion, the Court will use August 20, 2021 - the date of the letter in the record from Plaintiff's counsel. (Dkt. 37-8). This discrepancy in dates does not affect the merits of the pending motion.

[5] The complaint was initially filed in state court and, thereafter, properly removed pursuant to 28 U.S.C. § 1332. (Dkt. 1).

MEMORANDUM DECISION AND ORDER  - 5

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

To establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the non-moving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

**MEMORANDUM DECISION AND ORDER - 6**

## ANALYSIS

### 1.    Evidentiary Objections

Both parties raise evidentiary objections to certain materials submitted by opposing counsel in relation to the summary judgment motion. Under Federal Rule of Civil Procedure 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Objections to evidence submitted in support of or against a pending motion for summary judgment "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments). At the summary judgment stage, the focus is on the content of the evidence. Even if the evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as it could be presented in an admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006).

The Court will address below the materials objected to by the parties to the extent necessary to evaluate whether the submissions are appropriate for consideration in ruling on the motion for summary judgment. The Court will not address arguments challenging the weight or credibility of any evidence, and arguments contesting evidence that are not applicable at the summary judgment stage. Fed. R. Civ. P. 56(c); *Holt v. Noble House*

*Hotels & Resort, Ltd*, 370 F.Supp.3d 1158, 1164 (S.D. Cal. 2019). The Court makes no determination at this time concerning the admissibility of any evidence during trial.

Travelers submitted a chart of the mean precipitation for Boise in 2019 to rebut Plaintiff's position that snow or ice cause the leak and that it rained a lot in the fall of 2019. (Dkt. 37-9). Royal Plaza objects to the chart as lacking foundation and authentication. (Dkt. 39 at 4, 7, 10). Travelers maintains the chart is reliable and self-authenticating. The Court has not considered the chart in deciding this motion and, therefore, the objections are moot.

Travelers objects to statements by Dave Conway and Matthew Taylor as lacking foundation and improper opinion testimony concerning the cause of the roof leak. (Dkt. 43). The Court finds Conway and Taylor are both proper fact witnesses who can testify as to what they each personally observed and did. In addition, they may offer their opinions of what they understood caused the leak, so long as their opinions are rationally based on their own perception, helpful to the jury, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 702. Therefore, Travelers' objections to this evidence are denied and the Court will consider the statements by Conway and Taylor in deciding the motion, to the extent discussed below.

The parties each raise hearsay objections to certain statements contained in the submitted exhibits. Hearsay is a statement, either oral or written, other than one made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exclusion or exception applies. Fed. R. Evid. 802. Here, the Court finds the statements challenged based on

**MEMORANDUM DECISION AND ORDER - 8**

hearsay are properly considered on summary judgment, as the statements could be presented in a form that may be admissible at trial. Fed. R. Civ. P. 56(c)(2).

For instance, the statements by Conway and Taylor concerning their understandings of the cause of the leak may be offered not for the truth of the matter, but to show what actions they took as a result; or they may be offered by Travelers as an opposing party's statement. Fed. R. Evid. 801(c)(2); 801(d)(2). Similarly, Travelers representative Andy Strachota sent an email to Royal Plaza, dated November 11, 2020, that conveyed discussions Travelers had with representatives from Weathertight and Hammersmark stating the roof leak was caused by improper installation of roof membrane and flashing when the fence railing and other roof modifications were performed. Plaintiff argues these statements are inadmissible hearsay, as they are Strachota's summary of what he asserts Weathertight and Hammersmark told him. (Dkt. 39). While out of court statements are generally considered hearsay, Strachota's email could be offered for other purposes, such as to show Travelers investigated the claim and the basis for denying the claim. For these reasons, the Court denies the parties' hearsay objections and will consider the evidence on summary judgment.

## 2.    Causes of Action

### A.    Breach of Contract

Count One alleges Travelers breached duties owed under the policy contract, both express and implied, in its adjustment of the claim. (Dkt. 17, Am. Complaint ¶¶ 20-21). "It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law." *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th

Cir. 1981) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In Idaho, "[t]he

elements for a claim for breach of contract are: (a) the existence of the contract, (b) the

breach of the contract, (c) the breach caused damages, and (d) the amount of those

damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). On

this motion, Travelers contests only the second element of breach. (Dkt. 36). A breach

occurs when there is a failure to perform a contractual duty. *Shawver v. Huckleberry*

*Estates, L.L.C.*, 93 P.3d 685, 692 (Idaho 2004).

    The relevant terms of the insurance policy at issue here are as follows:

**A.**    **COVERAGE**
We will pay for direct physical loss of or damage to Covered
Property at the premises described in the Declarations caused by or
resulting from a Covered Cause of Loss.
…

    **4.**    **Covered Causes of Loss**
RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
a.    Limited in Paragraph **A.5.**, Limitations; or
b.    Excluded in Paragraph **B.**, Exclusions.

    **5.**    **Limitations**
a.    We will not pay for loss of or damage to:
(1) The "interior of any building or structure" or to
personal property in the building or structure, caused
by rain, snow, sleet, ice, sand or dust, whether driven
by wind or not, unless:
    (a) The building or structure first sustains
    damage by a Covered Cause of Loss to its roof
    or walls through which the rain, snow, sleet, ice,
    sand or dust enters; or
    (b) The loss or damage is caused by or results
    from thawing of snow, sleet or ice in the
    building or structure.
    …

**B.**    **EXCLUSIONS**

**MEMORANDUM DECISION AND ORDER - 10**

1.      We will not pay for loss or damage caused directly or
indirectly by any of the following. Such loss or damage is
excluded regardless of any other cause or event that
contributes concurrently or in any sequence to the loss. These
exclusions apply whether or not the loss event results in
widespread damage or affects a substantial area.

…

3.      We will not pay for loss or damage caused by or resulting
from any of the following under Paragraphs **a.** through **c.** But
if an excluded cause of loss that is listed in Paragraphs a. and
b. below results in a Covered Cause of Loss, we will pay for
the resulting loss or damage caused by that Covered Cause of
Loss.

…

c.  Faulty, inadequate or defective:

…

(2) Design, specifications, workmanship, repair,
construction, renovation, remodeling, grading,
compaction;

(3) Materials used in repair, construction, renovation or
remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

If an excluded cause of loss that is listed in Paragraphs **(1)** through
**(4)** above results in a Covered Cause of Loss, we will pay for the
resulting loss or damage caused by that Covered Cause of Loss. But
we will not pay for:

(1) Any cost of correcting or making good the fault,
inadequacy or defect itself, including any cost
incurred to tear out, repair or replace any part of any
property to correct the fault, inadequacy or defect; or

(2) Any resulting loss or damage by a Covered Cause of
Loss to the property that has the fault, inadequacy or
defect until the fault, inadequacy or defect is
corrected.

….

(Dkt. 37-14).

    To prove breach, Royal Plaza relies on Paragraph A.5.a.(1)(b) as the basis for

finding coverage existed and, therefore, that Travelers' denial of the claim breached the

**MEMORANDUM DECISION AND ORDER  - 11**

insurance policy. (Dkt. 39 at 4-12).[6] Travelers argues Count One fails as a matter of law because the insurance claim was properly denied and, therefore, Royal Plaza cannot prove the contract was breached. Specifically, Travelers asserts the roof leak was caused by wear and tear or faulty workmanship and, thus, the building did not first sustain a Covered Cause of Loss as required to find coverage for the interior water damage under Paragraph A.5.a.(1)(a) of the policy. (Dkt. 36 at 6-14; Dkt. 43 at 8). Royal Plaza maintains there is a genuine dispute as to whether the claimed loss or damage to the interior of the building was the result of, at least in part, the thawing of snow, sleet or ice which caused the roof membrane to separate and allow water into the building and, thus, whether coverage exists under Paragraph A.5.a.(1)(b). (Dkt. 39 at 6-7). Travelers contends that Royal Plaza has not identified evidence upon which a jury could find the leak was caused by freezing and thawing of water, snow and ice such that there is coverage under Paragraph A.5.a.(1)(b) of the policy. (Dkt. 43 at 8).

Under Idaho law, courts interpreting insurance policies apply "the general rules of contract law subject to certain special canons of construction." *AKB, LLC v. Mid-Century Ins. Co.*, 454 P.3d 1175, 1180 (Idaho 2019) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.*, 66 P.3d 242, 244-45 (Idaho 2003)). "Where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used. Where the policy is reasonably subject to differing interpretations, the language is ambiguous and its meaning is a question of fact." *Id.*

---

[6] Royal Plaza further contends that Traveler's omission of Paragraph A.5.a.(1)(b) from the letter denying the claim and its reliance on improper workmanship under Paragraph B as a basis for denying the claim constitute bad faith and negligent adjustment. (Dkt. 39 at 6, n. 2). These arguments relate to Counts Two and Three addressed below.

MEMORANDUM DECISION AND ORDER  - 12

"Additionally, 'because insurance policies are contracts of adhesion, not typically subject to negotiation between the parties, ambiguities must be construed most strongly against the insurer.'" *Id*. "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Id*. (citation omitted).

Here, neither party argues that the policy is ambiguous. The Court's own review of the policy language is that it is unambiguous. Therefore, coverage under the policy is determined according to the plain meaning of the words. *ABK, LLC*, 454 P.3d at 1181 (citing *Clark*, 66 P.3d at 245). Paragraph A.5.a.(1) plainly limits coverage for damage to the interior of the building caused by rain, snow, sleet, and ice to instances where there was: (a) first a Covered Cause of Loss that allowed the weather to enter the building, or (b) the loss or damage was caused by or results from thawing of snow, sleet or ice on the building. It is undisputed that if the freezing and thawing of snow and ice allowed water to penetrate the roof barrier and enter the building, as Royal Plaza argues, that the resulting damages would be a covered loss under Paragraph A.5.a.(1)(b). (Dkt. 41-1, Ex. B, Eiband Depo. at 47:5-10). The parties disagree on the cause or causes of the leak, and whether the claimed damages are covered under the policy.

On this motion, the issue on Count One is whether there is a genuine dispute of material fact that the leak was caused by or resulted from thawing of snow, sleet or ice on the building such that coverage existed under Paragraph A.5.a.(1)(b). Travelers has satisfied its initial burden by presenting evidence demonstrating the absence of a genuine dispute that the freezing and thawing of snow and ice caused the water intrusion.

*Devereaux*, 263 F.3d at 1076. Namely, evidence from Eiband's claim notes, claim denial letter, and deposition; the invoices from Upson and Weathertight; and an expert report by Construction Systems Management Inc. (CSMI). (Dkt. 37). These materials evidence that the cause of the leak was not weather-related and not covered under the policy.

The burden then shifts to Royal Plaza to identify facts sufficient to establish the existence of a genuine issue for trial to defeat the motion for summary judgment. *Cline*, 200 F.3d at 1229.[7] Royal Plaza argues a genuine issue of material fact exists as to whether the cause of the water intrusion was, at least in part, freezing and thawing of snow and ice. (Dkt. 39 at 7, 12). In support of its position, Royal Plaza relies primarily on the Declaration of Conway and the Deposition Testimony of Taylor. (Dkt. 39; Dkt. 41-1, Ex. C; Dkt 42). Royal Plaza also points to the Deposition Testimony of Hugues and the invoices from Upson and Weathertight.

Having carefully reviewed the parties' submissions and the entire record, the Court finds Royal Plaza has established the existence of a genuine issue of material fact as to the cause of the leak and, consequently, whether Travelers breached the insurance contract by improperly denying the claim. Royal Plaza has come forward with evidence upon which, when viewed in its favor, a jury could reasonably find that the leak was

---

[7] On this issue, Royal Plaza argues it need only present "**any** evidence of water intrusion caused by, or resulting from, freeze/thaw cycles or ice damming" to overcome summary judgment on the breach of contract claim. (Dkt. 39 at 7) (emphasis in original). However, the non-moving party's burden on summary judgment is somewhat different than stated by Royal Plaza. Once the movant has demonstrated the absence of a genuine dispute, such as here, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat a motion for summary judgment. *Cline*, 200 F.3d at 1229. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The non-movant must produce "significant probative evidence." *Id.* at 249. Thus, not just "any evidence" will do. Royal Plaza must identify facts sufficient to show a genuine issue exists. For the reasons stated herein, the Court finds Royal Plaza has done so as to Count One.

MEMORANDUM DECISION AND ORDER - 14

caused by freezing and thawing snow and ice and, therefore, that the claim was a covered

loss under Paragraph A.5.a.(1)(b) of the policy. Specifically, Conway's Declaration and

other evidence that conditions for freezing and thawing of ice and snow were present

during the relevant time period. (Dkt. 42).

In his Declaration, Conway states that he recalled a lot of rain in the fall of 2019

and that no leaks were observed or reported during that time. (Dkt. 42, Conway Dec.

¶ 10). When the Hughes' reported a leak on December 2, 2019, Conway inspected their

unit and the roof, at which time he observed snow and ice buildup on the roof and patio.

(Dkt. 42, Conway Dec. ¶ 12).[8] Conway states the weather in late November and early

December was wet and snowy at times with freezing and thawing, and that the leak was

intermittent, not continuous and only became apparent when the weather was bad. (Dkt.

42, Conway Dec. ¶¶ 10, 12, 13). Conway states to having helped Weathertight remove

snow and ice from the roof and patio on January 13, 2020, revealing voided membrane

seams and holes in the roofing membrane in the areas of ice and snow buildup. (Dkt. 42,

Conway Dec. ¶¶ 18, 19). Conway concludes that based on his seventeen years of

experience with the Royal Plaza building and actual observations throughout the fall and

winter of 2019, the leak was new and was the result of ice damming and freezing thawing

---

[8] Conway's declaration states that the pictures in the Upson report "accurately depict the state of the roof during December 2019 including ice and snow buildup under and around the deck pavers." (Dkt. 42, Conway Dec. ¶ 15). Conway's statement that the pictures show "ice and snow buildup under and around the deck pavers" has been withdrawn based on Royal Plaza's supplemental filing. (Dkt. 51) (stating the photographs on pages 3 and 8 of Upson's report do not show snow and ice on the roof). Therefore, the Court will not consider or rely on the withdrawn portion of Conway's declaration in deciding the motion for summary judgment. However, there is other evidence that ice and snow were present on the roof, as discussed herein.

**MEMORANDUM DECISION AND ORDER - 15**

related to the bad weather in late November and December 2019. (Dkt. 42, Conway Dec. ¶ 22).

The Court finds Conway's declaration is sufficient evidence, when coupled with other submissions discussed below, to establish a genuine issue of material fact when viewing the facts and evidence in the light favorable to Royal Plaza. There is evidence that snow and ice were present on the roof in December 2019 and January 2020. (Dkt. 41-1, Ex. D, Hughes Depo. at 15:5-11; Dkt. 42, Conway Dec. ¶¶ 12, 18-20; Dkt. 42-1, Ex. B, Weathertight Invoices). Therefore, conditions existed for the freezing and thawing of snow and ice at the time the leak was reported and when the roof was being inspected and repaired.

Routine inspection and maintenance of the roof was performed in August of 2019. Modifications to the rooftop patio area were made in September 2019. However, no leak was reported until December 2, 2019. The absence of any reported leak during the fall months in 2019, when there was some rain, followed by reports of the intermittent leak during bad weather in December 2019, is circumstantial evidence from which a jury could reasonably infer that thawing snow and ice caused the leak when construing the facts and inferences in favor of Royal Plaza.

Conway's conclusion that the leak was the result of ice damming and freezing thawing during the bad weather in late November and December 2019, is competent evidence of a genuine issue of material fact for purposes of this motion. The statements in Conway's declaration are based on his seventeen total years of experience at the building and his actual observations during the fall and winter of 2019-2020 – including, most

notably, Conway's personal knowledge and participation with the inspections and repairs of the leak. (Dkt. 42, Conway Dec. ¶ 22).[9] Further, Conway's statements that ice and snow were present on the roof at the time the contractors were trying to find and repair the leak are corroborated by the deposition testimony of Hughes and Taylor. (Dkt. 41-1, Ex. C, Taylor Depo. at 22:25; and Ex. D, Hughes Depo. at 15:9-11).

Taylor's testimony relevant to the presence of ice and snow is evidence of a genuine issue of material fact. However, Taylor's testimony concerning the cause of the leak is problematic. Taylor stated his understanding, based on the Upson invoice and the Weathertight explanation, was that the leak was the result of rain, snow, and ice getting into the cracks, grouting, and behind the granite, and then ponding and freezing, which created gapping that caused the leak. (Dkt. 41-1, Ex. C, Taylor Depo. at 52:17-21; 63:22-24; 64:6-65:25). Taylor's testimony on this issue is belied by the records upon which he relied.

During his deposition, Taylor referred specifically to the pictures on page three of the Upson invoice as showing snow and ice on the roof when explaining his understanding of the cause of the leak. (Dkt. 41-1, Ex. C, Taylor Depo. at 63:22-64:20). Royal Plaza relies on that testimony as evidence that the leak was caused by thawing snow and ice. (Dkt. 39 at 9-10). However, it is now undisputed that the pictures on page three of the Upson invoice do not show snow and ice on the roof, contrary to Taylor's

---

[9] In so finding, the Court makes no determination concerning the admissibility, credibility, or weight of this evidence at trial. Indeed, there are legitimate bases upon which Travelers may challenge Conway's statements at trial. (Dkt. 43). At this stage, the Court finds only that the statements in Conway's declaration may be presented in a form that could be admissible at trial.

**MEMORANDUM DECISION AND ORDER - 17**

testimony. (Dkt. 50, 51). Further, Weathertight's explanation that Taylor relied on during his deposition, makes no reference to the freezing and thawing of snow and ice. (Dkt. 37-12).[10] Rather, Weathertight explained that water from the top of the planter areas and from rain was running down the walls and behind the granite grout and the patio wall flashing, and was ponding under the patio. (Dkt. 37-12).[11] Thus, neither of the records identified by Taylor support his testimony regarding the cause of the leak. The Court therefore has not considered Taylor's testimony concerning the cause of the leak in deciding this motion. The Court makes no determination as to the admissibility of Taylor's testimony during trial, as it is unknown how it may be presented at trial.

Nevertheless, the Court finds Royal Plaza has identified sufficient evidence to defeat summary judgment, albeit barely. When viewed in favor of Plaintiff, the evidence presented by Royal Plaza – Conway's Declaration and the evidence that no leak was reported until there were conditions for freezing and thawing of snow and ice – is circumstantial evidence from which a jury could find for Plaintiff on Count One. Travelers has submitted strong contrary evidence and viable challenges to Conway's

---

[10] Notably, Royal Plaza argues Weathertight's explanation is not competent evidence on summary judgment, despite the fact that Taylor relied on it during his deposition as a basis for concluding the cause of the leak was freezing and thawing of snow and ice. (Dkt. 37-12; Dkt. 39 at 4, 11). The Court finds Weathertight's explanation is appropriate evidence on this motion, at least for purposes of considering Taylor's testimony, because Taylor expressly identified the Weathertight explanation as a basis for concluding the cause of the leak was freezing and thawing of snow and ice, and Royal Plaza relies on that testimony to defeat summary judgment. In doing so, the Court is not weighing the evidence or making credibility determinations but, rather, determining whether Taylor's testimony is competent evidence that gives rise to a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 249.

[11] The Court recognizes that Weathertight's invoices from January 2020 reference having to remove snow and ice from the roof and that the attached pictures show snow and ice was present on the roof. (Dkt. 42-1, Ex. B). However, when asked about the cause of the leak, Taylor pointed only to the Upson invoice and Weathertight explanation. (Dkt. 41-1, Ex. C, Taylor Depo. at 63-65). Thus, the Court has considered only the records identified by Taylor for purposes of evaluating whether the evidence submitted by Royal Plaza establishes a genuine issue of material fact.

**MEMORANDUM DECISION AND ORDER - 18**

declaration and other evidence offered by Royal Plaza. (Dkts. 36, 37, 43). Whether Royal Plaza's evidence is able to withstand those challenges and prove the elements of Count One remains to be seen. Those are matters for a jury to decide at trial. The Court's role at this stage is not to weigh the strength or evaluate the credibility of the evidence but, rather, to determine whether a genuine issue for trial exists. The Court finds the submissions here establish a genuine issue of material fact as it relates to the cause of the leak and, consequently, whether coverage exists under the policy. For these reasons, the motion for summary judgment will be denied as to Count One.

## B.    Bad Faith

Count Two alleges Travelers breached the covenant of good faith and fair dealing during its adjustment of the insurance claim by engaging in a course of conduct, knowing it would deprive Royal Plaza of benefits it was entitled to under the policy; misrepresenting facts or policy provisions relating to coverage; failing to conduct a reasonable investigation; and otherwise engaging in conduct that was an extreme deviation from industry standards. (Dkt. 17, Am. Complaint ¶¶ 27-30).

For a first-party insured to recover on a bad faith claim under Idaho law, the insured must show: 1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages. *Parks v. Safeco Ins. Co. of Illinois*, 376 P.3d 760, 766 (Idaho 2016). "Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy." *ABK, LLC*, 454 P.3d at 1186 (quoting *Robinson v. State Farm*

MEMORANDUM DECISION AND ORDER  - 19

*Mut. Auto. Ins. Co.*, 45 P.3d 829, 834 (Idaho 2002) (explaining plaintiff has the burden of establishing coverage under a policy to prevail on a bad faith claim even if claim is paid)).

Here, Travelers contends summary judgment is warranted on the bad faith claim because: 1) there was no covered loss; 2) the claim was fairly debatable and denial of the claim was a good faith mistake; 3) there is no evidence that Travelers failed to conduct a reasonable investigation, misrepresented the policy, or otherwise engaged in conduct that was an extreme deviation from industry standards; and 4) the harm is fully compensable by contract damages. (Dkt. 36). Royal Plaza disagrees with each of Travelers' arguments. (Dkt. 39). The Court will address each of Travelers' contentions in turn below.

### i.    Covered Loss

As discussed above, Royal Plaza has identified evidence giving rise to a genuine issue of material fact as to whether the water damage was caused by thawing of snow and ice. Therefore, the Court cannot conclude as a matter of law that there was no coverage under the policy. However, for the reasons stated below, the Court finds summary judgment on the bad faith claim is appropriate because Plaintiff has not identified evidence that Travelers intentionally and unreasonably denied the claim, the claim was fairly debatable, denial of the claim was the result of a good faith mistake, and Royal Plaza has not identified any extra-contractual damages.

### ii.    The Claim was Reasonably Denied and Fairly Debatable

A denial or delay of payment will not be considered "unreasonable" if it was due to the insurer's "reasonable, fairly-debatable, honest, good-faith mistake in interpreting

MEMORANDUM DECISION AND ORDER  - 20

the insurance policy." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1253 (Idaho 2010). "An insurer does not commit bad faith when it challenges the validity of a 'fairly debatable' claim, or when its delay results from honest mistakes." *Vaught v. Dairyland Ins. Co.*, 956 P.2d 674, 679 (1998) (quoting *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1018 (Idaho 1986)). "Fairly debatable means that there was a reasonable dispute or legitimate question over the 'eligibility, amount or value of the claim.'" *Cedillo v. Farmers Insur. Co.*, 408 P.3d 886, 892 (Idaho 2017) (quoting *Robinson*, 45 P.3d at 833–34). The insured has the burden of showing that the claim was not fairly debatable. *Robinson*, 45 P.3d at 832

The Court finds the claim here was reasonably denied and fairly in dispute. Travelers discharged its contractual obligations to Royal Plaza by promptly acknowledging and investigating the claim. Royal Plaza contests the adequacy of the investigation and argues Travelers' omission of subparagraph (b) in Paragraph A.5.a.(1) and other exclusions in the letter denying the claim, demonstrates bad faith because the omission hampered the claim's investigation for a period time.

However, there is no evidence that Travelers omitted subparagraph (b) in an effort to avoid revealing a provision under which the claim may be or was covered. Rather, the evidence in the record is that Eiband included the policy provision that was the "main basis" for denying the claim – namely, Paragraph A5.a.(1)(a). (Dkt. 37-6; Dkt. 41-1, Ex. B, Eiband Depo. at 42-46). Eiband testified that Paragraph A.5.a.(1)(b) was discussed by Travelers, but not included in the denial letter because "it did not apply according to [Travelers'] interpretation of this policy." (Dkt. 37-6, Eiband Depo. at 39:6-12). Eiband

went on to explain that "I didn't see any cause for including this because I didn't see any damage that I would have considered related to the thawing of snow, ice that would have created a storm-generated opening that would then allow water and moisture to enter the building." (Dkt. 37-6, Eiband Depo. at 41:7-16). Further, Eiband stated that he did not include defective construction exclusion in the denial letter because "[a]t the time I applied what I felt was the main portion of the denial or the basis of the denial" which he testified was that "coverage would not apply because there was not first a storm-generated opening that allowed water to enter the property. It was a lack of adequate construction or remodel of that section, which allowed the water into the building and caused the damage, which is an exclusion in this policy." (Dkt. 37-6, Eiband Depo. at 45:13-15, 45:24-46:1-5). Royal Plaza's conclusory argument that the omission of certain policy provisions was itself evidence of bad faith is insufficient to establish a genuine issue of material fact.

Further, there is no evidence that Travelers' delayed resolving the claim or failed to conduct a reasonable inspection and investigation. The claimed loss date is December 2, 2019. However, Plaintiff did not report the claim until February 11, 2020. (Dkt. 37-4, Claim Summary). Travelers contacted Royal Plaza the following day, on February 12, 2020, and conducted the initial inspection on February 17, 2020. Travelers sent the letter denying the claim on March 23, 2020. (Dkt. 37-5, Denial Letter; Dkt. 37-15, Claim Note). Plaintiff and Travelers had some ongoing discussions and further inspections following the denial letter, but Travelers maintained its position that the claimed damage

**MEMORANDUM DECISION AND ORDER - 22**

was not caused by a weather-related event and, therefore, was not covered. (Dkt. 37-8, Royal Plaza Letter; Dkt. 37-12, Travelers Email; Dkt. 37-15, Claim Note).

### iii.    Extra-Contract Damages

Finally, Royal Plaza has not identify any legitimate extra-contract damages. The allegations of having to hold additional HOA meetings, unspecified administrative costs, and generalized frustrations with having to meet the satisfaction of the unit owners affected by the leak do not evidence recoverable damages for bad faith. Any loss in value to the unit are damages that would have been incurred by the owners of the unit themselves, not the HOA. Royal Plaza's arguments of potential or "presumed" damages in the form of lost HOA dues and value to the building due to the length of time it took to complete repairs are without any evidentiary support and speculative. (Dkt. 39 at 17). Indeed, Hughes' testimony regarding the delay in completing repairs to the roof, which Plaintiff relies on, concerns the time period prior to when Travelers was notified of the claim - between the report of the leak on December 2, 2019 and the inspections and repairs in January of 2020 – and, further, Hughes' testimony does not attribute the delay in finding and repairing the leak to Travelers. (Dkt. 41-1, Ex. D at 17:1-21:15, 29:5-18).

### iv.    Conclusion

Based on the foregoing, the Court finds Royal Plaza has failed to submit evidence upon which a jury could find in it is favor on the elements of its bad faith claim. Therefore, the motion for summary judgment will be granted in favor of Travelers on Count Two.

**MEMORANDUM DECISION AND ORDER  - 23**

### C.    Negligent Adjustment

Count Three alleges Travelers had a duty to conform to industry standards of conduct in dealing with its customers, including Royal Plaza, and in how claims are adjusted. (Dkt. 17, Am. Complaint ¶ 33). Plaintiff alleges Travelers breached that duty by failing to investigate the cause of the water damage and when its agents misapplied the policy language resulting in denial of coverage under the policy. (Dkt. 17, Am. Complaint ¶ 34).

A claim for negligent adjustment requires the plaintiff to establish the following: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Peck v. Cincinnati Insur. Co.*, 2016 WL 5746351, at *6 (D. Idaho Sept. 30, 2016) (quoting *Reynolds v. American Hardware Mut. Ins. Co.*, 766 P.2d 1243, 1246-47 (Idaho 1988)). A mere breach of contract will not support a tort cause of action. *Id.* (citing *Selkirk v. State Ins. Fund*, 22 P.3d 1028, 1031 (Idaho 2000)).

The Idaho Supreme Court has allowed a tort claim for negligent adjustment as an independent cause of action from intentional bad faith. *See Selkirk Seed*, 22 P.3d at 1032-33. In *Selkirk*, the insured employer argued the insurance company negligently adjusted and overpaid a claim of an injured employee, which cause the employer's risk rating to increase and increased the cost of worker's compensation insurance. However, the facts and circumstances in this case do not yield themselves to the same result.

The negligent adjustment claim raised here is premised on the same facts and arguments as the bad faith claim – that Travelers failed to investigate the cause of the water damage, misapplied and omitted the policy language, and breached the implied duty of good faith and fair dealing. (Dkts. 17, 39). Thus, the negligent adjustment claim is duplicative of the tortious conduct alleged in the bad faith claim. Idaho Courts have routinely held that "[a]n implied duty of good faith and fair dealing exists between insurers and insureds in every insurance policy." *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 395 (Idaho, 2010). An independent tort claim for breach of the implied covenant of good faith and fair dealing in the context of a first-party insurance action in Idaho, is considered a claim of bad faith. *See Rice v. Union Central Life Ins. Co.*, No. CV–05–216–S–BLW, 2006 WL 3523538 at *6 (D. Idaho Dec.6, 2006) (referring to plaintiff's claim for breach of the implied covenant of good faith and fair dealing as a bad faith claim); *ABK, LLC*, 454 P.3d at 1186 ("A plaintiff has an independent action in tort when this duty is breached which this Court recognizes as the tort of bad faith."); *White*, 730 P.2d at 1020 ("The tort of bad faith breach of insurance contract then, has its foundations in the common law covenant of good faith and fair dealing…."). Because there is no independent tort alleged in the negligent adjustment claim, the Court will grant the motion for summary judgment on Count Three.

## **<u>ORDER</u>**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. 36) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Counts Two and Three – insurance bad faith and negligent

adjustment - which are dismissed with prejudice. The motion is denied as to Count One - breach of contract.

IT IS FURTHER ORDERED that the parties must confer and submit a joint statement as to how they intend to proceed in this matter on Count One on or before **January 9, 2025**.

DATED: December 9, 2024

Honorable Debora K. Grasham
United States Magistrate Judge